[No. 31857-1-II.   Division Two.   November 9, 2005.]

*In the Matter of the Detention of* ROBERT A. GREENWOOD, *Appellant.*

278

*Peter B. Tiller* (of *The Tiller Law Firm*), for appellant.

*Robert M. McKenna, Attorney General,* and *Jennifer L. Treadwell Karol* and *Melanie Tratnik, Assistants,* for respondent.

¶1 BRIDGEWATER, J. — Robert A. Greenwood appeals his civil commitment under chapter 71.09 RCW, the sexually violent predators act. We hold that RCW 71.09.060(2) does not violate due process by permitting an individual previously found to be incompetent to stand trial in a criminal proceeding to be committed as a sexually violent predator. We also hold that the court did not err either in permitting jurors to ask questions of witnesses during the initial hearing under RCW 71.09.060(2) or in refusing to instruct the jury on the inferior degree offense of third degree rape. We affirm.

¶2 In 2001, Greenwood was charged with first degree rape of a child in Lewis County Juvenile Court and was subsequently found incompetent to stand trial. One year

later, Greenwood was charged with second degree rape with forcible compulsion in Thurston County Superior Court. He was again adjudged incompetent to stand trial, and on February 14, 2003, the State filed a petition to commit Greenwood as a sexually violent predator (SVP) under chapter 71.09 RCW.

¶3 The statute under which the State sought to commit Greenwood provides in relevant part:

> When it appears that . . . a person who has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial is about to be released, or has been released on, before, or after July 1, 1990 . . . and it appears that the person may be a sexually violent predator, . . . the attorney general if requested by the prosecuting attorney may file a petition alleging that the person is a "sexually violent predator" and stating sufficient facts to support such allegation.[1]

RCW 71.09.030.

¶4 Following a probable cause hearing, the court ordered a trial to be held pursuant to RCW 71.09.060(2) and appointed Greenwood a guardian ad litem (GAL). Under that statute, when the individual charged with a sexually violent offense has been found incompetent to stand trial, "the court shall first hear evidence and determine whether the person did commit the act or acts charged." RCW 71-.09.060(2). If the court finds beyond a reasonable doubt that the person committed the acts charged, the court then may determine whether he or she should be committed as an SVP. RCW 71.09.060(2).

¶5 Greenwood requested a jury for the initial hearing under RCW 71.09.060(2) regarding whether he committed second degree rape with forcible compulsion in Thurston

---

[1] A "sexually violent predator" is defined as:

any person who has been *convicted of or charged with* a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

RCW 71.09.020(16) (emphasis added).

County.[2] During the hearing, Greenwood requested that the court instruct the jury on the *lesser-included* offense of third degree rape. The court declined to give the instruction, finding that a lesser-included offense instruction was "not appropriate" in a civil action under RCW 71.09.060(2). 2 Report of Proceedings (RP) (May 5, 2004) at 220.

¶6 Also during the hearing, the jury submitted questions directed to the witnesses. Questions to the complaining witness included: "At what point was he holding your head? Did your health problems keep [you] from running?"; "[D]id you try at anytime [sic] to hurt [M]r. Greenwood with your teeth or hands during the oral sex?"; [W]hy didn't you get up and run away when Mr. Greenwood was on his back?"; and "Did you scream at any time?" Clerk's Papers (CP) at 117-20. Greenwood did not object to the jury's questioning.

¶7 On May 5, 2004, the jury found that the State proved beyond a reasonable doubt that Greenwood committed second degree rape with forcible compulsion. And on May 10, 2004, the court entered specific findings in accordance with RCW 71.09.060(2).[3] The court found that Greenwood's "incompetence and/or developmental disability did not substantially affect his jury trial on this act." CP at 148. It further found that Greenwood's GAL "assisted him throughout the proceedings and ensured his ability to consult with and assist his attorney" and that Greenwood's attorney "was able to formulate and present a defense on Mr. Greenwood's behalf." CP at 148. The court then ordered a determination regarding whether Greenwood should be committed as an SVP.

¶8 During Greenwood's commitment trial, Dr. Charles Lund, a certified sex offender treatment provider, testified

---

[2] The 2001 first degree child rape charge was not at issue.

[3] RCW 71.09.060(2) provides that after the initial hearing, the court:

shall make specific findings on whether the person did commit the act or acts charged, the extent to which the person's incompetence or developmental disability affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel and to testify on his or her own behalf, the extent to which the evidence could be reconstructed without the assistance of the person, and the strength of the prosecution's case.

that Greenwood suffered from mental abnormalities that caused him serious difficulty controlling his sexually violent behavior and that made him likely to engage in predatory acts of sexual violence in the future. The court determined that the State had proved beyond a reasonable doubt that Greenwood was an SVP and was likely to engage in predatory acts of sexual violence in the future if not confined to a secure facility. Greenwood was then committed for placement in a secure facility "for control, care, and treatment." CP at 154. He appeals.

## I. Constitutionality of RCW 71.09.060(2)

¶9 Greenwood challenges the constitutionality of RCW 71-.09.060(2), both facially and as it was applied to him. He asserts that the statute violates due process because it permits an individual previously found to be incompetent to stand trial to be tried in a proceeding "that has the hallmarks of a criminal action." Br. of Appellant at 22. Put another way, Greenwood argues that the initial hearing phase of RCW 71.09.060(2) is "criminal or quasi-criminal" in nature and, consequently, the United States and Washington State Constitutions prohibited the State from "prosecut[ing]" him, an incompetent individual, for second degree rape. Reply Br. of Appellant at 2. Greenwood is in error.

¶10 RCW 71.09.060(2) provides in relevant part:

> If the person charged with a sexually violent offense has been found incompetent to stand trial . . . *the court shall first hear evidence and determine whether the person did commit the act or acts charged if the court did not enter a finding prior to dismissal under RCW 10.77.090(4) that the person committed the act or acts charged.* The hearing on this issue must comply with all the procedures specified in this section. In addition, *the rules of evidence applicable in criminal cases shall apply, and all constitutional rights available to defendants at criminal trials, other than the right not to be tried while incompetent, shall apply.* After hearing evidence on this issue, the *court shall make specific findings* on whether the person did commit the

act or acts charged, the extent to which the person's incompetence or developmental disability affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel and to testify on his or her own behalf, the extent to which the evidence could be reconstructed without the assistance of the person, and the strength of the prosecution's case. *If, after the conclusion of the hearing on this issue, the court finds, beyond a reasonable doubt, that the person did commit the act or acts charged, it shall enter a final order, appealable by the person, on that issue, and may proceed to consider whether the person should be committed* pursuant to this section.

(Emphasis added.)

¶11  In *In re Personal Restraint of Young*, 122 Wn.2d 1, 857 P.2d 989 (1993), our Supreme Court held that the sexually violent predator provisions of the Community Protection Act of 1990 satisfied substantive due process. *Young*, 122 Wn.2d at 10. The court found the statute, as a whole, constitutional because the State had a compelling interest "both in treating sex predators and protecting society from their actions" and because the statute required proof prior to civil commitment that the individual was both mentally ill and dangerous. *Young*, 122 Wn.2d at 26-27. But the court held that, where an individual has been released from confinement on a sex offense and lives in the community immediately prior to the initiation of the sexual predator proceedings, due process requires the State to prove dangerousness through a "recent overt act."[4] *Young*, 122 Wn.2d at 41.

¶12  And in *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), the United States Supreme Court considered the constitutionality of Kansas' Sexually Violent Predator Act, Kan Stat. Ann. §§ 59-29a01 to 59-29a15. Similar to chapter 71.09 RCW, the Kansas Act established procedures for the civil commitment of persons convicted of

---

[4] RCW 71.09.060(1) now provides in relevant part:

   If, on the date that the petition is filed, the person was living in the community after release from custody, the state must also prove beyond a reasonable doubt that the person had committed a recent overt act.

or charged with a sexually violent offense and who, due to a mental abnormality or personality disorder, were likely to engage in predatory acts of sexual violence. *Hendricks*, 521 U.S. at 352. In considering the constitutionality of the Act, the Court stated, "[w]e have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." *Hendricks*, 521 U.S. at 357.

¶13 The Court concluded that the Act satisfied substantive due process requirements, reasoning that (1) the State's purpose of restricting the freedom of the dangerously mentally ill was a "legitimate nonpunitive governmental objective" and (2) the Act provided sufficient procedural protections by requiring evidence of past sexually violent behavior and a present mental condition creating a likelihood of such conduct in the future. *Hendricks*, 521 U.S. at 363-64.

¶14 Additionally, the Court determined that the Act was civil, rather than criminal, in nature because "[n]othing on the face of the statute suggest[ed] that the legislature sought to create anything other than a civil commitment scheme designed to protect the public from harm" and the Act's purpose was neither retributive nor to function as a deterrent. *Hendricks*, 521 U.S. at 361-62. In finding that the Act did not serve a retributive purpose, the Court noted that it did not make a criminal conviction a prerequisite for commitment; the absence of the necessary criminal responsibility "suggests that the State is not seeking retribution for a past misdeed." *Hendricks*, 521 U.S. at 362. Likewise, the *Young* court concluded that Washington's "sexually violent predator Statute is civil, not criminal, in nature." *Young*, 122 Wn.2d at 23.

¶15 *Hendricks* and *Young* are dispositive. Greenwood erroneously focuses on the initial hearing under RCW 71.09.060(2) to determine whether an individual has committed the sexually violent act or acts charged in arguing that the statute is unconstitutional. A conviction is not required for an individual to qualify as an SVP; a person

need only have been *charged* with a crime of sexual violence. RCW 71.09.020(16). Rather, the requirement that the State prove beyond a reasonable doubt than an individual not convicted of a sexually violent crime due to incompetency in fact committed the act charged is merely an additional safeguard for individuals facing commitment under chapter 71.09 RCW. Indeed, it is akin to the requirement that an individual already living in the community be shown to have committed a "recent overt act" in order to demonstrate that the person is dangerous as well as mentally ill. RCW 71.09.060(1). Thus, the requirement of the initial hearing is not an end in itself as with a criminal trial, but a part of a two-step process designed to *protect* incompetent individuals.

¶16 As in *Young*, the requirement that the State provide additional evidence of dangerousness where an individual has not been tried due to incompetency does not render the commitment proceedings under RCW 71.09.060(2) "criminal." The statute's civil purpose remains the same: to protect the community from, and offer treatment to, dangerous sexual predators. Greenwood further argues that RCW 71.09.060(2)'s use of procedural safeguards traditionally found in criminal trials—i.e., the application of the rules of evidence and all constitutional rights available to defendants at criminal trials other than the right not to be tried while incompetent—renders the proceedings here criminal rather than civil. But the Court in *Hendricks* rejected this claim; as in *Hendricks*, "[t]he numerous procedural and evidentiary protections afforded here demonstrate that the . . . [l]egislature has taken great care to confine only a narrow class of particularly dangerous individuals, and then only after meeting the strictest procedural standards." *Hendricks*, 521 U.S. at 364. Because Greenwood does not actually challenge the adequacy of the procedural requirements of the initial hearing under RCW 71.09.060(2), we need not address whether they satisfy *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

¶17 Additionally, because Greenwood does not argue that an individual has a general right to competency at his or her civil commitment trial, we need not address that issue. Rather, he argues solely that the protections afforded individuals under RCW 71.09.060(2)—i.e., the requirement that the State prove that the individual did in fact commit the act charged—constitute "prosecution" under a criminal statute of an individual previously determined to be incompetent. Reply Br. of Appellant at 2, 9. Greenwood asserts the prohibition of RCW 10.77.050 that "[n]o incompetent person may be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." Br. of Appellant at 22.

¶18 Our conclusion is that the SVP proceedings are civil and as such do not constitute prosecution under a criminal statute. The trial court did not err.

## II. Jury Questioning of Witnesses

¶19 Greenwood next contends that the trial court erred in permitting the jury to ask questions of witnesses during the initial hearing under RCW 71.09.060(2) to determine whether he committed second degree rape with forcible compulsion. Br. of Appellant at 24. He argues that the questioning occurred during a "criminal proceeding" and should not have been permitted under CR 43. Br. of Appellant at 24. This argument is without merit as we hold that the proceedings under RCW 71.09.060(2) are civil, not criminal, in nature.

¶20 Under CR 43(k), the court "shall permit jurors to submit to the court written questions directed to witnesses." Thus, the trial court properly followed the rules of civil procedure in permitting the jury to submit written questions directed to witnesses at Greenwood's hearing.

¶21 As well, we reject Greenwood's claim that his trial counsel was deficient in failing to object to the jury's questioning of witnesses under CR 43(k). In order to establish an ineffective assistance of counsel claim, Greenwood

must first show that his counsel's performance was deficient and then that the deficient performance prejudiced his defense. *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003). Counsel was not deficient in failing to object to questions properly submitted under the rules of civil procedure.

### III. Inferior Degree Instruction

¶22 Although Greenwood requested a lesser-included offense instruction below, he now asserts that the trial court erred in refusing to give an instruction during the initial hearing concerning whether he committed second degree rape or the *inferior degree* offense of third degree rape. He argues that he was entitled to such an instruction as a constitutional right available to him under RCW 71-.09.060(2) and that the trial court improperly analyzed the instruction as a lesser-included offense instruction. In response, the State argues that Greenwood failed to request an inferior degree instruction below and that the trial court properly declined to give a lesser-included (or inferior degree) offense instruction because it was irrelevant to the proceedings.[5] The State is correct.

¶23 We review a trial court's refusal to give a proposed jury instruction for an abuse of discretion. *State v. Winings*, 126 Wn. App. 75, 86, 107 P.3d 141 (2005). But we review de novo alleged errors of law in jury instructions. *Winings*, 126 Wn. App. at 86. Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *Winings*, 126 Wn. App. at 86. Here, the trial court denied Greenwood's request for a lesser-included offense instruction as a matter of law, i.e., because such an instruction would serve "no legal purpose" in a civil SVP action; thus, our review is de novo. 2 RP at 220.

---

[5] Additionally, the State asserts that a thorough review of the trial court's analysis demonstrates that it actually did consider the proposed third degree rape instruction under an inferior degree instruction analysis.

■ ¶24 Greenwood requested below that the court give a lesser-included offense instruction, not an instruction that third degree rape is an inferior degree offense of second degree rape. A defendant cannot claim that the trial court erred in refusing an instruction he or she did not offer unless the failure to so instruct is violative of a constitutional right. *State v. Tamalini*, 134 Wn.2d 725, 730-31, 953 P.2d 450 (1998).

¶25 Greenwood contends that the right to an inferior degree instruction is "one of the constitutional rights to be afforded a defense" under RCW 71.09.060(2). Br. of Appellant at 30. Under that statute, the rules of evidence applicable in criminal cases and "all constitutional rights available to defendants at criminal trials" apply to the initial hearing to determine whether an individual has committed the act or acts charged. RCW 71.09.060(2).

■ ¶26 An inferior degree instruction was irrelevant to the proceedings in this case. In order to proceed with an SVP trial where the individual has previously been found incompetent to stand trial, RCW 71.09.060(2) requires the State to prove beyond a reasonable doubt that the person committed "*the act or acts charged.*" RCW 71.09.060(2) (emphasis added). Here, the State was required to prove that Greenwood committed second degree rape with forcible compulsion; if the jury found that he did not commit second degree rape, the State could not proceed with an SVP trial. Accordingly, no legal purpose would be served if the jury determined that Greenwood was not guilty of second degree rape but was guilty of some other offense. As the trial court stated, whether Greenwood committed second degree rape by forcible compulsion was the only issue at the initial hearing and was a "yes or no" question. 2 RP at 221. In conclusion, Greenwood fails to show an error of constitutional magnitude. The court did not err.

¶27 Affirmed.

VAN DEREN, A.C.J., concurs.

¶28 MORGAN, J.[*] (dissenting) — This case involves at least two questions not previously addressed in Washington: (1) May a defendant be committed as a sexually violent predator (SVP) even though he or she has never been convicted of a crime?[6] (2) If so, may he or she be committed following a trial at which he or she was incompetent to understand the proceedings or assist in preparing and presenting a defense?[7] Without meaning to suggest that the first question should be answered yes,[8] I believe that the second should be answered no, at least in part.

¶29 In Washington, chapter 71.09 RCW is the statute under which a defendant may be committed as a sexually violent predator. It requires that the constitutionally-mandated element of current dangerousness[9] be evidenced not just by expert testimony, but also by a recent act[10] that may

---

[*] Judge J. Dean Morgan was serving as a judge of this court when this case was argued. Since retired, he is now serving as a judge pro tempore.

[6] Apparently referring to chapter 71.09 RCW in its entirety, the majority states that in *In re Personal Restraint of Young*, 122 Wn.2d 1, 857 P.2d 989 (1993), our Supreme Court "found the statute, as a whole, constitutional." Majority at 283; *see also* majority at 284. But the *Young* court was dealing only with defendants convicted before SVP proceedings were commenced; it neither considered nor addressed a defendant who had never been convicted.

[7] *See* RCW 10.77.010(14) (" 'Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect."). *See also Drope v. Missouri*, 420 U.S. 162, 171-72, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).

[8] Like the majority, I do not consider or discuss this first question.

[9] The constitutionally-mandated elements of civil commitment are (1) current mental illness and (2) current dangerousness. *Jones v. United States*, 463 U.S. 354, 363, 368, 370, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983); *see also Foucha v. Louisiana*, 504 U.S. 71, 75-76, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992); *Addington v. Texas*, 441 U.S. 418, 426, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979); *O'Connor v. Donaldson*, 422 U.S. 563, 574-75, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975).

[10] Evidence of such an act is necessary if "the standard of dangerousness" is to be "a constitutional basis for detention." *In re Harris*, 98 Wn.2d 276, 285, 654 P.2d 109 (1982).

or may not have been reduced to conviction.[11] When the recent act is a conviction, its occurrence will previously have been determined in a criminal trial at which the defendant was necessarily competent.[12] When the recent act is not a conviction, its occurrence or nonoccurrence will be determined using the procedures set forth RCW 71-.09.060(2). Insofar as pertinent here, RCW 71.09.060(2) provides:

> If the person charged with a sexually violent offense has been found incompetent to stand trial, and is about to or has been released pursuant to RCW 10.77.090(4), and his or her commitment is sought pursuant to subsection (1) of this section, the court shall first hear evidence and determine whether the person did commit the act or acts charged. . . . The hearing on this issue must comply with all the procedures specified in this section. In addition, the rules of evidence applicable in criminal cases shall apply, and all constitutional rights available to defendants at criminal trials, other than the right not to be tried while incompetent, shall apply. . . . If, after the conclusion of the hearing on this issue, the court finds, beyond a reasonable doubt, that the person did commit the act or acts charged, it shall enter a final order, appealable by the person, on that issue, and may proceed to consider whether the person should be committed pursuant to this section.

¶30 According to Greenwood, this statute violates due process, which clearly applies here.[13] To analyze whether he is correct, we should assess the following factors: (1) "the

---

[11] *Young*, 122 Wn.2d at 41-42; *Harris*, 98 Wn.2d at 284-85.

[12] RCW 10.77.090(1); *Medina v. California*, 505 U.S. 437, 449, 453, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992) ("Due Process Clause affords an incompetent defendant the right not to be tried"); *Drope*, 420 U.S. at 172-73; *Pate v. Robinson*, 383 U.S. 375, 386, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966).

[13] *Addington*, 441 U.S. at 425 ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); *Harris*, 98 Wn.2d at 279 ("due process guaranties must accompany involuntary commitment for mental disorders"). Hence, the State must employ "proper procedures and evidentiary standards" when it seeks to commit a person under a civil commitment statute that applies generally, *Addington*, 441 U.S. at 426-27, *Foucha*, 504 U.S. at 80, *Harris*, 98 Wn.2d at 284-85, or under a civil commitment statute that applies specifically to SVPs. *Kansas v. Hendricks*, 521 U.S. 346, 357 (majority), 374 (Breyer, J., dissenting), 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997); *Young*, 122 Wn.2d at 41-42.

private interest that will be affected"; (2) "the risk of an erroneous deprivation of such interest," together with "the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[14]

¶31 RCW 71.09.060(2) affects Greenwood's private interest in his liberty.[15] That interest is substantial, and the statute's impact on it is great.[16]

¶32 RCW 71.09.060(2) creates a high risk that Greenwood will be erroneously deprived of liberty. Courts traditionally require an adversary proceeding to ensure that they receive both sides of the story; it is hazardous at best to rely on just one side.[17] Yet that is precisely what RCW 71-.09.060(2) mandates, notwithstanding its oxymoronic grant of "all constitutional rights available to defendants at criminal trials, other than the right not to be tried while incompetent." How can a defendant who is not competent to be tried—i.e., who "lacks the capacity to understand the proceedings against him or her or to assist in his or her defense"[18]—furnish the information needed to mount a defense, decide whether to testify or remain silent, confront the witnesses against him, or meaningfully decide whether and how to exercise the many other rights that would be his if he were competent? An incompetent criminal defendant

---

[14] *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *see also Harris*, 98 Wn.2d at 285.

[15] *See Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (even convicted felon currently serving a sentence has a liberty interest in not being transferred to a mental institution without appropriate due process); *Foucha*, 504 U.S. at 78-79.

[16] *Addington*, 441 U.S. at 425 ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); *Jones*, 463 U.S. at 361; *Foucha*, 504 U.S. at 80.

[17] *See Drope*, 420 U.S. at 172 (common law's prohibition against trying an incompetent defendant "is fundamental to an adversary system of justice"); *Medina*, 505 U.S. at 446 (same prohibition is "fundamental," with "deep roots in our common-law heritage").

[18] RCW 10.77.010(14).

has no way to " ' "make his defense" ' ";[19] the same is true for an incompetent SVP; and in either instance the result is a one-sided proceeding with a high risk of an erroneous deprivation—regardless of whether the proceeding is labeled "civil" or "criminal."

¶33 RCW 71.09.060(2) creates a risk that can be greatly reduced by additional safeguards. It could easily provide that Greenwood may initially be committed only until he regains his competence to stand trial,[20] and that when he regains his competence, he may relitigate, in a two-sided proceeding, whether he perpetrated the required act and is an SVP.

¶34 RCW 71.09.060 implements the government's legitimate interest in protecting the public by incarcerating and treating Greenwood. But it could do that just as well, with a minimum of additional burdens, by initially committing Greenwood only until he regains his competence to stand trial,[21] then permitting him to relitigate, in a two-sided proceeding, whether he perpetrated the required act and is an SVP.

¶35 Concluding that RCW 71.09.060(2) describes a procedure that is neither reliable nor necessary, I would hold that it violates due process insofar as it purports to authorize, based on findings of fact made while Greenwood was incompetent, commitment after he regains competency. To that extent then, I respectfully dissent.

Review denied at 158 Wn.2d 1010 (2006).

---

[19] *Medina*, 505 U.S. at 446 (quoting *Drope*, 420 U.S. at 171 (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES *24)).

[20] I express no opinion on whether this initial commitment would be under chapter 71.05 or 71.09 RCW, or on whether either of those statutes would need to be amended. From a constitutional perspective, it could last until Greenwood was no longer incompetent to stand trial, or until he was either no longer mentally ill or no longer dangerous. *Cf. Foucha*, 504 U.S. at 86; *Jones*, 463 U.S. at 370; *Jackson v. Indiana*, 406 U.S. 715, 724-25, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972).

[21] See *preceding* note.