167 P.3d 560 (2007)
STATE of Washington, Respondent,
v.
Daniel Alfred POSEY, Jr., Petitioner.
No. 78043-9.
Supreme Court of Washington, En Banc.
Argued February 27, 2007.
Decided September 20, 2007.
*561 Stephanie C Cunningham, Attorney at Law, Seattle, WA, for Petitioner.
Kenneth L. Ramm Jr., Yakima, WA, for Respondent.
C. JOHNSON, J.
¶ 1 This case asks us to determine whether a juvenile's acquittal in adult court on an assault charge automatically restores juvenile court jurisdiction over remaining charges under the statute then in effect, former RCW 13.04.030 (2000), and whether the trial court improperly excluded e-mail evidence under the rape shield statute, RCW 9A.44.020. We reverse in part and affirm in part. We reverse the Court of Appeals and hold that Daniel Alfred Posey, Jr., was incorrectly sentenced as an adult. We affirm the Court of Appeals' holding that the trial court did not abuse its discretion when it excluded the e-mail evidence.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 Posey and H.A.H. met in high school in September 2002 and became romantically and sexually involved with each other. After H.A.H. tried to end the relationship, Posey allegedly had forcible intercourse with H.A.H. on two occasions and threatened her with a gun. The State charged Posey with first degree assault-domestic violence[1] and three counts of second degree rape-domestic violence.[2] Posey was 16 years old at the time of the alleged crimes, but because first degree assault is considered a "serious violent offense" under former RCW 9.94A.030(37)(a)(v) (2002),[3] the juvenile court was required to automatically decline juvenile jurisdiction over Posey pursuant to former RCW 13.04.030(1)(e)(v)(A) (2000).[4] Posey was acquitted on the first degree assault charge and one count of second degree rape, but the jury found him guilty on the remaining two counts of second degree rape. The adult criminal court sentenced Posey to a minimum term of 119 months and a maximum term of life in prison.
¶ 3 In his appeal to Division Three of the Court of Appeals, Posey challenged the automatic decline on numerous grounds, including violations of his constitutional rights to equal protection and due process. Further, Posey argued the adult court lacked jurisdiction to sentence him because he was acquitted of the first degree assault charge (the crime prompting the automatic decline of jurisdiction by the juvenile court). Also, Posey argued that a 2005 amendment to RCW 13.04.030 applied retroactively to him, thus, automatic juvenile court jurisdiction was restored. See Laws of 2005, ch. 238, § 1. Finally, Posey argued the trial court erred when it precluded the introduction of evidence pursuant to the rape shield statute, RCW 9A.44.020.
¶ 4 Specifically, Posey sought to introduce an e-mail copied by police from H.A.H.'s computer as evidence that the victim would have consented to violence and rape. The e-mail was written around the time H.A.H. met Posey, but it was neither addressed to nor sent to Posey. According to the record and offer of proof, H.A.H.'s e-mail stated that she would "enjoy" being raped and that she wanted a boyfriend that would "choke her" and "beat her." The trial court excluded the *562 e-mail. Report of Proceedings (RP) (Jan. 12, 2004) at 51-60.
¶ 5 The Court of Appeals held the trial court had proper jurisdiction over Posey, that the 2005 amendment to RCW 13.04.030 did not apply retroactively, and that the trial court did not abuse its discretion when it excluded the e-mail evidence. State v. Posey, 130 Wash.App. 262, 122 P.3d 914 (2005). Also, the Court of Appeals concluded that the automatic decline statute affords equal protection of law if the class to be protected is all juveniles charged with a "serious violent offense." Posey, 130 Wash.App. at 273, 122 P.3d 914. The court also found that we have already held the statute does not deny due process of law. Posey, 130 Wash.App. at 265, 122 P.3d 914; In re Boot, 130 Wash.2d 553, 570-71, 925 P.2d 964 (1996). We reverse in part and affirm in part. Also, we find it necessary to only address the issues of the trial court's jurisdiction and its exclusion of the e-mail evidence.

ISSUES
A. Whether the adult court retained jurisdiction over Posey's remaining charges under former RCW 13.04.030(1)(e)(v)(A) when Posey was acquitted of first degree assault.
B. Whether the trial court abused its discretion when it refused to admit evidence of the victim's e-mail under the rape shield statute.

ANALYSIS

Jurisdiction
¶ 6 Statutory interpretation is a question of law; therefore, we review the interpretation of former RCW 13.04.030(1)(e)(v)(A) de novo. State v. Salavea, 151 Wash.2d 133, 140, 86 P.3d 125 (2004).
¶ 7 The relevant portion of the statute provides:
[T]he juvenile courts in this state shall have exclusive original jurisdiction over all proceedings . . . unless [t]he juvenile is sixteen or seventeen years old and the alleged offense is . . . [a] serious violent offense as defined in RCW 9.94A.030.
Former RCW 13.04.030(1)(e)(v)(A).
¶ 8 The relevant portion of former RCW 9.94A.030 provides:
"Serious violent offense" is a subcategory of violent offense and means . . . [a]ssault in the first degree.
Former RCW 9.94A.030(37)(a)(v).
¶ 9 Posey argues that the automatic decline provision in former RCW 13.04.030(1)(e)(v)(A) is dictated by the conviction, not the charge. Posey was charged with assault in the first degree which prompted the decline of juvenile jurisdiction. Posey argues that when he was acquitted of the enumerated charge, jurisdiction should have automatically transferred to juvenile court for sentencing on his two convictions for second degree rape, which is a nonenumerated crime that does not prompt decline of juvenile jurisdiction.
¶ 10 In contrast, the State argues the charge dictates jurisdiction because the statute uses the words "alleged offense." We have already determined that former RCW 13.04.030(1)(e)(v)(A) is unambiguous and that the legislature set up exclusive original jurisdiction in adult court over juveniles 16 or 17 years of age who committed the enumerated violent offenses. Boot, 130 Wash.2d at 565, 925 P.2d 964. However, we have also recognized the statute furthers the legislative intent to punish with certainty and more severity those juvenile offenders who commit violent crimes rather than those youthful offenders who commit other crimes. State v. Mora, 138 Wash.2d 43, 50, 977 P.2d 564 (1999).
¶ 11 In Mora, we explicitly recognized these statutory principles. There, a juvenile had originally been charged with one count of possession of a stolen firearm. The information was amended to add a count of second degree assault while armed with a firearm, a crime that automatically brought the juvenile under the jurisdiction of adult criminal court. The information was then amended a second time, which "reduced" the charges to possession of a stolen firearm and assault in the third degree; neither of the offenses charged *563 in the second amended information automatically subjected a juvenile to adult court jurisdiction. The juvenile was tried as an adult on two offenses, which would have otherwise brought him under the exclusive original jurisdiction of the juvenile court. The juvenile challenged adult court jurisdiction, arguing that when the charges were amended, the superior court was required to remand his case to juvenile court for trial or to conduct a decline hearing. We agreed. We reversed and remanded the matter for further proceedings, holding that the trial court erred when it failed to remand the case to juvenile court following the State's decision to prosecute the juvenile for offenses not enumerated in the statute. Mora, 138 Wash.2d at 54, 977 P.2d 564.
¶ 12 Although Mora involved a situation where the information was amended before trial, the statutory framework and principles we recognized are equally applicable here. The legislature has established a statutory scheme intended to impose more severe punishment on juveniles who have committed certain criminal offenses.
¶ 13 Additionally, we have recognized the difference between Washington's juvenile justice and adult criminal systems. The purpose of the juvenile justice system is to establish a system of having primary responsibility for, and responding to the needs of offenders, as well as to hold juveniles responsible for their offenses. State v. Rice, 98 Wash.2d 384, 392, 655 P.2d 1145 (1982). The critical distinction between the two systems lies in the Juvenile Justice Act of 1977's (chapter 13.40 RCW) policy of responding to the needs of juvenile offenders; we have found this policy as rehabilitative in nature, whereas the criminal system is punitive. Monroe v. Soliz, 132 Wash.2d 414, 419-20, 939 P.2d 205 (1997).
¶ 14 As if to underscore this critical distinction between the juvenile justice and criminal adult systems, the legislative history leading the way to the 2005 amendment to RCW 13.04.030, in addition to the amendment itself, reinforces the legislature's intent for juveniles to receive treatment and rehabilitation through juvenile disposition. Specifically, the Senate Bill Report reflects the intent to keep juveniles in the juvenile system to allow creative intervention at the juvenile justice level.[5] In keeping with the policy to treat juveniles and adults differently, the legislature amended former RCW 13.04.030(1)(e)(v)(A) to provide juvenile court jurisdiction on remaining nonenumerated crimes in the event a juvenile was acquitted on enumerated crimes.
¶ 15 As a final point, the enumerated offenses referenced in former RCW 13.04.030 and defined in RCW 9.94A.030 are exceptions to the general rule that juvenile courts in Washington shall have exclusive original jurisdiction over all proceedings. Because of the legislature's intent to treat juvenile offenders differently from adult offenders and because of the legislature's intent to impose more severe punishment on juveniles who have committed certain criminal offenses, the exceptions listed in former RCW 13.04.030 apply narrowly. In fact, the subsequent amendment to former RCW 13.04.030  which requires remand to juvenile court for sentencing juveniles acquitted in adult court of enumerated charges  bolsters the principles set out by the legislature that the more severe punishment should be only imposed on defendants who actually commit an enumerated charge. The legislature intended that a juvenile receive treatment and rehabilitation through juvenile disposition, unless the juvenile commits an enumerated charge under the statute.
¶ 16 The legislature, subsequent to our decision in Mora, has revised the statutory scheme and removed any doubt on Mora's statutory interpretation by affirming what we determined to underscore the statutory division between the juvenile and adult criminal systems.
¶ 17 RCW 13.04.030 now provides:
The juvenile court shall have exclusive jurisdiction over the disposition of any remaining charges in any case in which the juvenile is found not guilty in the adult criminal court of the charge or charges for *564 which he or she was transferred, or is convicted in the adult criminal court of a lesser included offense that is not also an offense listed in (e)(v) of this subsection.
RCW 13.04.030(1)(E)(II).
¶ 18 Under this section, any juvenile properly charged in adult court of an enumerated offense is "returned" to juvenile court for imposition of sentence as a juvenile should the juvenile be convicted of a nonenumerated offense. This statutory revision is consistent with what we determined in Mora.
¶ 19 Here, Posey was acquitted of the enumerated charge that triggered the automatic decline provision. While the alleged charge of first degree assault properly placed Posey in the jurisdiction of adult court under the statute, once Posey was acquitted of the enumerated charge, the matter should have been remanded to juvenile court for a decline hearing or sentencing because, as stated previously, the legislative intent underlying the automatic decline provision is to impose more severe punishment on juveniles who have committed certain criminal offenses. Posey was acquitted of the only charge that properly placed him in the jurisdiction of the adult court. Therefore, we reverse the Court of Appeals' holding below that the adult court had proper sentencing jurisdiction over Posey after he was acquitted of first degree assault.

Evidentiary Issue
¶ 20 Posey argues the trial court erred when it precluded the introduction of e-mail evidence based on Washington's rape shield statute. The relevant portion of the statute provides:
(2) Evidence of the victim's past sexual behavior including but not limited to the victim's . . . general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3). . . .
(3) In any prosecution for the crime of rape . . . evidence of the victim's past sexual behavior . . . is admissible on the issue of consent only pursuant to the following procedure:
. . . .
(d) At the conclusion of the hearing, if the court finds that the evidence proposed . . . is relevant to the issue of the victim's consent . . . the court shall make an order stating what evidence may be introduced by the defendant. . . .
RCW 9A.44.020.
¶ 21 We review a trial court's decision to exclude evidence for an abuse of discretion; also, the exercise of discretion in balancing the danger of prejudice against the probative value of the evidence is a matter within the trial court's discretion and should be overturned only if no reasonable person could take the view adopted by the trial court. State v. Hudlow, 99 Wash.2d 1, 17, 659 P.2d 514 (1983). A trial judge, not an appellate court, is in the best position to evaluate the dynamics of a jury trial and therefore the prejudicial effect of a piece of evidence. State v. Taylor, 60 Wash.2d 32, 40, 371 P.2d 617 (1962).
¶ 22 Posey sought to introduce an e-mail copied by police from H.A.H.'s computer as evidence that the victim would have consented to violence and rape and to rebut the State's theory that Posey was violent and abusive. The trial court barred the admission of the evidence. Posey now argues the trial court erred and relies on State v. Carver, 37 Wash.App. 122, 124, 678 P.2d 842 (1984), to assert that the e-mail evidence should have been admitted.
¶ 23 In Carver, the defendant had been charged with one count of indecent liberties and one count of second degree statutory rape. The defendant in Carver attempted to introduce evidence that the victims had suffered prior sexual abuse by others to rebut the inference that the victims would have been unable to describe the abusive acts because of their age unless the abuse was experienced at the hand of the defendant. The Court of Appeals in that case reversed the trial court's decision to exclude the evidence and held it was admissible because (1) it was not evidence of a victim's prior misconduct but evidence of prior abuse; (2) consent was not at issue since the victims' ages made *565 it impossible for them to consent; and (3) evidence of prior abuse was not so prejudicial as to "cause the jury to decide the case on an improper emotional basis." Carver, 37 Wash.App. at 123-24, 678 P.2d 842.
¶ 24 However, the Court of Appeals here found Carver distinguishable because the e-mail evidence described only potential prior sexual misconduct of H.A.H., not prior sexual abuse of a victim as in Carver. Also, it found the factual issue here was consent and noted that consent was not at issue in Carver. Moreover, the Court of Appeals, in finding the trial court did not abuse its discretion, held the e-mail was of little probative value and included the following excerpt from the trial court in its opinion:
"[P]eople might talk about something, but it is very different talking about it then actually doing it. Anybody who's had an e-mail correspondence with anybody knows it's easy to say things during that correspondence that you wouldn't necessarily say to their face."
Posey, 130 Wash.App. at 277, 122 P.3d 914 (alteration in original)(quoting RP at 56).
¶ 25 We agree with this analysis and conclusion. Accordingly, under the applicable standard of review, we affirm the Court of Appeals and find that the trial court did not abuse its discretion when it precluded admission of the e-mail evidence. The e-mail was not addressed to Posey nor was it sent to Posey, and it described only potential prior sexual misconduct or potential sexual mores, rendering the admission of the e-mail violative of the rape shield statute.

CONCLUSION
¶ 26 We reverse the Court of Appeals' holding that Petitioner was correctly sentenced as an adult, and we affirm that the trial court did not abuse its discretion when it excluded the e-mail evidence. We affirm the conviction and remand this matter to juvenile court for further proceedings.[6]
WE CONCUR: Chief Justice GERRY L. ALEXANDER, BARBARA A. MADSEN, BOBBE J. BRIDGE, SUSAN OWENS, MARY E. FAIRHURST and JAMES M. JOHNSON, JJ.
CHAMBERS, J. (concurrence).
¶ 27 I concur with the majority's resolution of the jurisdictional issue. I also, reluctantly, concur with the majority's resolution of the evidentiary challenge. I write separately to stress that this decision turns on the standard of review.
¶ 28 Daniel Alfred Posey, Jr., and H.A.H. were high school classmates who were romantically and sexually involved. H.A.H. claimed that when she attempted to end the relationship, Posey threatened and raped her. Posey claimed that H.A.H. consented to violent intercourse. H.A.H. testified that she did not consent and that Posey used physical force to overcome her resistance. In support of his claim that H.A.H. consented, Posey sought to introduce an e-mail sent by H.A.H. to another friend wherein H.A.H. allegedly wrote that "she would `enjoy' being raped and that she wanted a boyfriend that would `choke her' and `beat her.'" Majority at 561.
¶ 29 Under our rape shield law, evidence of the complaining witness's sexual history may not generally be introduced in rape prosecutions. RCW 9A.44.020. However, there is a limited exception. Such evidence may be admissible to show the victim's consent, but only if the trial judge concludes the probative value of the evidence is so vital to the defendant's case that it cannot be excluded without "result[ing] in denial of substantial justice." RCW 9A.44.020(3)(d).[1]
*566 ¶ 30 In my view, the proffered e-mail evidence is clearly relevant to Posey's defense of consent. See RCW 9A.44.020(3)(d). Justice would have been advanced by its admission. I fear there exists a significant risk that exclusion of the evidence "result[ed] in denial of substantial justice to the defendant." Id. I do not believe this is the kind of evidence the legislature intended to exclude when it passed the rape shield law.
¶ 31 That said, applying the abuse of discretion standard as I must, I cannot say the trial court erred in finding that the prejudicial effect of this evidence outweighed its probative value. See RCW 9A.44.030; State v. Hudlow, 99 Wash.2d 1, 17-18, 659 P.2d 514 (1983) (trial court in best position to make that determination). A review of the record reflects that the trial court gave great thought and consideration to its evidentiary ruling. Therefore, I reluctantly concur with the majority on this issue.
SANDERS, J. (concurring in part, dissenting in part).
¶ 32 I agree with the majority's conclusion that the adult court did not have proper sentencing jurisdiction over Daniel Posey after he was acquitted of first degree assault. I dissent, however, because in my view the trial court abused its discretion by excluding H.A.H's e-mail, and such error requires reversal of Posey's convictions.[1]
¶ 33 In the e-mail Posey sought to admit at trial, H.A.H. wrote she would "enjoy" being raped and that "the perfect boyfriend" would "choke her," which would make her "love him more," and "beat her." Verbatim Report of Proceedings (RP) (Pretrial) (Jan. 12, 2004) at 52. The trial court excluded the e-mail pursuant to the State's rape shield statute, RCW 9A.44.020, which provides in part:
Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section.
RCW 9A.44.020(2).
¶ 34 The purpose of the statute is "to encourage rape victims to prosecute, and to eliminate prejudicial evidence of prior sexual conduct of a victim which often has little, if any, relevance on the issues for which it is usually offered, namely, credibility or consent." State v. Carver, 37 Wash.App. 122, 124, 678 P.2d 842 (1984). As such, the statute generally makes evidence of a victim's past sexual behavior inadmissible on the issue of victim credibility. See State v. Hudlow, 99 Wash.2d 1, 659 P.2d 514 (1983). The statute, however, "was not intended to establish a blanket exclusion of evidence which is relevant to other issues which may arise in prosecutions for rape." Carver, 37 Wash. App. at 124, 678 P.2d 842 (citing State v. Simmons, 59 Wash.2d 381, 368 P.2d 378 (1962)). Past sexual behavior may be admitted if (1) it is relevant to the issue of the victim's consent, (2) its probative value is not substantially outweighed by a substantial danger of undue prejudice, and (3) its exclusion would result in denial of substantial justice to the defendant. RCW 9A.44.020(3)(d). See also Hudlow, 99 *567 Wash.2d at 7, 659 P.2d 514 (discussing former rape shield statute, RCW 9.79.150(3) (1975)).
¶ 35 H.A.H.'s e-mail was wrongly excluded for two reasons. First, it is not "past sexual behavior" as contemplated by the statute. See State v. Demos, 94 Wash.2d 733, 736, 619 P.2d 968 (1980) ("For the statute to be applicable the evidence must relate to the victim's past sexual behavior." (emphasis added)). Sexual behavior commonly refers to a victim's prior sexual conduct. See Carver, 37 Wash.App. at 124, 678 P.2d 842 (one purpose of the rape shield statute is to "eliminate prejudicial evidence of prior sexual conduct of a victim"); Hudlow, 99 Wash.2d 1, 659 P.2d 514 (evidence of victims' prior sexual behavior properly excluded); State v. Camara, 113 Wash.2d 631, 781 P.2d 483 (1989) (trial court properly refused to permit cross-examination of victim's past participation in certain sexual acts).
¶ 36 H.A.H.'s e-mail illustrated a preference for sexual violence and discussed only potential sexual conduct  it made no reference to any past sexual behavior or conduct. Because the e-mail "does not fit within the concepts and purposes of the rape shield statute," its exclusion was in error. Carver, 37 Wash.App. at 124, 678 P.2d 842.
¶ 37 Second, in addition to failing to meet the definition of "past sexual behavior" under the statute, H.A.H's e-mail is relevant to issues other than consent or her sexual predilections. Specifically, it is relevant to rebut the State's theory that H.A.H. remained in an abusive relationship with Posey out of fear of future violence. In Carver, the Court of Appeals opined, "[m]erely because the evidence pertains to a sexual experience does not mean we must strain to fit it into the special confines of the rape shield statute. Rather, we must apply general evidentiary principles of relevance, probative value and prejudice." Id. at 124, 678 P.2d 842 (emphasis added).
¶ 38 Here, the trial court concluded H.A.H.'s e-mail had "some probative value" but was "also very prejudicial." RP at 60. It observed,
[P]eople might talk about something, but it is very different talking about it than actually doing it. Anybody who's had an email correspondence with anybody knows it's easy to say things during that correspondence that you wouldn't necessarily say to their face.
RP at 56. The court's statement implies it would be unfair to introduce H.A.H.'s email because, due to the informal nature of e-mail communication, the e-mail may not accurately reflect her true feelings and/or beliefs. However, by analogy to an identical standard under ER 403, "[e]vidence is not inadmissible under ER 403 simply because it is detrimental or harmful to the interests of the party opposing its admission; it is prejudicial only if it has the capacity to skew the truth-finding process." Wilson v. Olivetti N. Am., Inc., 85 Wash.App. 804, 814, 934 P.2d 1231 (1997) (citing Hudlow, 99 Wash.2d at 12-13, 659 P.2d 514). "`[U]nfair prejudice' as it is used in rule 403 usually refers to prejudice [resulting] from evidence that is more likely to cause an emotional response than a rational decision by the jury." Lockwood v. AC & S, 109 Wash.2d 235, 257, 744 P.2d 605 (1987). H.A.H.'s e-mail, while harmful to the State's position, is not highly prejudicial evidence as contemplated by RCW 9A.44.020(3)(d).
¶ 39 H.A.H.'s e-mail is relevant to rebut the State's theory that H.A.H continued to remain in the relationship with Posey and send him "love letters" after the alleged rapes out of fear of future violence. See State v. Harris, 97 Wash.App. 865, 872, 989 P.2d 553 (1999) ("Evidence tending to establish a party's theory, or to qualify or disprove the testimony of an adversary, is always relevant and admissible."). As such, its exclusion substantially impairs Posey's defense and deprives him of his right of confrontation guaranteed by the Sixth Amendment to the United States Constitution. Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988).
¶ 40 Because the trial court's improper exclusion of H.A.H.'s email demands reversal of Posey's convictions, I dissent.
NOTES
[1] RCW 9A.36.011(1)(a).
[2] RCW 9A.44.050(1)(a).
[3] Amended by Laws of 2006, ch. 122, § 7.
[4] Amended by Laws of 2005, ch. 238, § 1.
[5] Senate Bill Report on SHB 2061, 59th Leg., Reg. Sess. (Wash.2005), as reported by Senate Committee on Human Services and Corrections (Mar. 31, 2005).
[6] At oral argument, the State conceded that Posey would not have been declined juvenile court jurisdiction had a hearing been held.
[1] In relevant part, RCW 9A.44.020(3)(d) provides:

if the court finds that the evidence proposed to be offered by the defendant regarding the past sexual behavior of the victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant; the court shall make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.
[1] At first blush, Justice Chambers' concurring opinion seems to agree H.A.H.'s email was wrongly excluded, stating the e-mail is relevant to Posey's defense of consent, "justice would have been advanced by its admission," and "I do not believe this is the kind of evidence the legislature intended to exclude when it passed the rape shield law." Concurrence at 566. However Justice Chambers continues, "[t]hat said, applying the abuse of discretion standard as I must, I cannot say the trial court erred in finding that the prejudicial effect of this evidence outweighed its probative value." Id.

Indeed this court reviews a trial court's decision as to the admissibility of evidence under an abuse of discretion standard. State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997). However we review a trial court's interpretation of a statute de novo. Pub. Util. Dist. No. 2 of Grant County v. N. Am. Foreign Trade Zone Indus., 159 Wash.2d 555, 566, 151 P.3d 176 (2007). Therefore, because the meaning of the rape shield statute is a question of law, the trial court's inaccurate interpretation the statute's meaning, as well as the court's erroneous assertion that H.A.H.'s e-mail falls under its purview, are owed no deference.