[No. 35345-8-II.   Division Two.   April 15, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. ZACHARY H. MERIDIETH, *Appellant*.

---

48

*Thomas E. Doyle* and *Patricia A. Pethick*, for appellant.

*Edward G. Holm, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

¶1 BRIDGEWATER, J. — Zachary H. Meridieth appeals the Thurston County Superior Court's denial of his motion for

arrest of judgment or new trial following his jury convictions for six counts of first degree child rape and six counts of first degree child molestation. Because the juvenile court made no finding of probable cause that an enumerated offense occurred after Meridieth's 16th birthday and there is no evidence on which we could determine conclusively that an enumerated offense occurred after age 16, the automatic decline of juvenile jurisdiction was improvident. The adult superior court was without jurisdiction. Thus, under *In re Personal Restraint of Dalluge*, 152 Wn.2d 772, 775, 100 P.3d 279 (2004), we remand to adult superior court (because Meridieth is over 18), for a *Dillenburg* de novo hearing on whether declination would have been appropriate. *In re Habeas Corpus of Dillenburg*, 70 Wn.2d 331, 355, 422 P.2d 783 (1967). If declination would have been appropriate, then the conviction stands, but if not, the defendant is entitled to a new trial in adult court. Finally, Meridieth provides a statement of additional grounds,[1] alleging various errors that we find meritless.

## FACTS

¶2 On August 26, 2005, the Thurston County Sheriff's Office (TCSO) received a report of multiple sexual offenses involving Meridieth. The two alleged victims, B.A.C. (date of birth July 20, 1994) and A.N.S. (date of birth September 13, 1993), disclosed to their parents that Meridieth, their cousin, had sexual contact with them on multiple occasions.

¶3 Detective Bergt from the TCSO interviewed both B.A.C. and A.N.S., and they told the detective that when they were 9 and 10 years old, Meridieth, who was between 15 and 16 years old at the time, was a regular overnight guest and occasionally babysat them. The girls stated that when Meridieth was alone with them, he told them to undress, touched the private areas of their bodies with his hands and mouth, and had both girls put their hands on his

---

[1] *See* RAP 10.10.

penis and his penis in their mouths. They also stated that Meridieth took turns putting his penis into their vaginas and that he made them watch while he masturbated. During several incidents, he placed his hand over their mouths so they could not scream and held their arms so they could not get away. He then threatened to kill them if they told anyone. Both B.A.C. and A.N.S. stated that these incidents occurred repeatedly from the time they were 9 and 10 years old until "approximately one year ago," when the incidents stopped. Clerk's Papers (CP) at 4.

¶4 On August 31, 2005, Bergt interviewed Meridieth following his arrest. Meridieth initially denied any sexual contact with the girls, but he then admitted that he put his mouth on B.A.C.'s vagina on two occasions, put his penis in her mouth on two occasions, digitally penetrated her vagina on two occasions, and put his penis between her legs without penetrating her vagina on two occasions. He also admitted that he put his mouth on A.N.S.'s vagina on two occasions, put his penis in her mouth on two occasions, digitally penetrated her vagina on two occasions, and put his penis between her legs without penetrating her vagina on two occasions.

¶5 The State charged Meridieth with four counts of first degree child rape (counts I-IV) and four counts of first degree child molestation (counts V-VIII) against B.A.C., and four counts of first degree child rape (counts IX-XII) as well as four counts of first degree child molestation (counts XIII-XVI) against A.N.S. The State's original charging period was between August 1, 2003, and August 31, 2004.[2]

¶6 Meridieth was 17 years old at the time of his arrest. Based on his age, the State booked him in the Thurston County Juvenile Detention Center. He appeared before the Honorable Judge Pomeroy on September 1, 2005, represented by counsel. Judge Pomeroy entered an order of automatic decline under RCW 13.04.030(1)(e)(v)(C), signed

---

[2] Based on testimony unrelated to this appeal, on July 10, 2006, the State filed a third amended information expanding the charging period to include August 1, 2002 to August 31, 2004.

by both Meridieth's and the State's counsel at the time. Meridieth's counsel neither objected nor requested an extension of juvenile jurisdiction.

¶7 Meridieth's case proceeded to jury trial in adult court, and on July 12, 2006, the jury found him guilty on all but four counts (counts IV, VIII, XII, and XVI). The trial court set sentencing for August 11, 2006, but on August 9, 2006, Meridieth filed a motion and declaration to continue the sentencing hearing. On the morning of the sentencing hearing, Meridieth filed a motion for new trial, arrest of judgment, or remand to juvenile court. Although the State objected, the trial court granted Meridieth's motion for a continuance and agreed to hear his motions for arrest of judgment under CrR 7.4 and for a new trial under CrR 7.5. The trial court ultimately denied both motions and sentenced Meridieth to a standard range sentence.

¶8 The primary question for this court is whether Meridieth was properly before the adult division of the Thurston County Superior Court when he was tried and convicted.

## ANALYSIS

### JURISDICTION

¶9 Meridieth initially argues that the trial court lacked jurisdiction over him because his automatic mandatory decline was faulty. Specifically, he alleges that the trial court relied on the incorrect version of RCW 13.04-.030(1)(e)(v) when it determined that he should be automatically declined. Br. of Appellant at 12. He bases this assertion on the trial court's acknowledgment that the "old form of the order was used." Br. of Appellant at 12; Report of Proceedings (Sept. 14, 2006) at 19. He then states that under the amended version of the statute, he would not have been subject to the automatic mandatory decline because there was insufficient evidence presented at trial that he committed the first degree rape(s) after he turned 16 years old on May 25, 2004. Meridieth contends that he

was 16 for only the last 98 days of the charging period and that the record is silent as to the specific dates of his crimes.

¶10 The State contends that Meridieth is approaching the jurisdictional question from the wrong direction because it is the charge rather than the verdict that controls which court has jurisdiction. Accordingly, the State needed to have probable cause to believe that only one of the offenses occurred when Meridieth was 16 or 17 years old. The State also notes that, although Meridieth frames his allegations on appeal around the trial court's denial of his motion for arrest of judgment or new trial, he is actually arguing that insufficient evidence supported that he committed at least one rape after he turned 16.

¶11 The State is correct in the framing of the issue of jurisdiction—that is, there need only be probable cause to believe that at least one of the enumerated offenses, namely first degree child rape, occurred after Meridieth turned 16. Meridieth is correct that the allegations and supporting documentation before the judge at the time of automatic declination do not reference specific dates for the offenses that cause an automatic decline of the matter to adult court.

¶12 We review a trial court's decision on a motion for arrest of judgment or new trial under an abuse of discretion standard. *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995); *State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998).

¶13 Former RCW 13.04.030 (2004) provided in relevant part:

> (1) Except as provided in this section, the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings:
>
> . . . .

(e) Relating to juveniles alleged or found to have committed offenses, traffic or civil infractions, or violations as provided in RCW 13.40.020 through 13.40.230, unless:

. . . .

(v) The juvenile is sixteen or seventeen years old and the alleged offense is:

. . . .

(C) Robbery in the first degree, rape of a child in the first degree, or drive-by shooting, committed on or after July 1, 1997.

¶14 Effective July 24, 2005, the legislature amended RCW 13.04.030(1)(e)(v) so that it now reads, "The juvenile is sixteen or seventeen years old *on the date the alleged offense is committed* and the alleged offense is: . . . ." (Emphasis added.) Accordingly, under the amended version, Meridieth would have been subject to automatic mandatory decline only if he was 16 or 17 on the date of the alleged offense.

¶15 Meridieth turned 16 on May 25, 2004. Here, Meridieth's automatic mandatory declination occurred on September 1, 2005, over 30 days after the amendment took effect. There is no evidence in the record indicating which version of RCW 13.04.030(1)(e)(v) Judge Pomeroy applied, although it does appear that she signed a version of the form conforming to the preamendment version.

¶16 The State agrees on appeal that the trial court should have applied the amended version of RCW 13.04.030 to Meridieth's case. The trial court did not employ special interrogatories asking the jury to determine the specific dates for each offense. As such, the question is whether there was probable cause given to the judge that Meridieth committed first degree child rape while he was 16, in which case the declination was proper.

■■ ¶17 Meridieth argues that the testimony throughout the entire trial did not support a finding that any of the

incidents occurred while he was 16.[3] The State correctly contends that the testimony at trial is not relevant here because it is the nature of the charge that dictates jurisdiction, not the final outcome. *In re Boot*, 130 Wn.2d 553, 575, 925 P.2d 964 (1996); *State v. Manro*, 125 Wn. App. 165, 104 P.3d 708, *review denied*, 155 Wn.2d 1010 (2005). Both the *In re Boot* court and the *Manro* court were interpreting the former version of RCW 13.04.030(1)(e)(v), but it does not appear that this proposition has changed. *In re Boot*, 130 Wn.2d at 562; *Manro*, 125 Wn. App. at 171-72. But our legislature has carved out an exception to this rule as recognized in *State v. Posey*, 161 Wn.2d 638, 646, 167 P.3d 560 (2007).

¶18 In *Posey*, the juvenile defendant was acquitted for the enumerated crime that placed him in adult court and was convicted instead of a nonenumerated offense. *Posey*, 161 Wn.2d at 647. The *Posey* court held that "the alleged charge . . . properly placed [the defendant] in the jurisdiction of adult court under the statute." *Posey*, 161 Wn.2d at 647. But the *Posey* court then determined that any juvenile properly charged in adult court with an enumerated offense is "returned" to juvenile court for imposition of sentence as a juvenile if the juvenile is convicted of a nonenumerated offense. *Posey*, 161 Wn.2d at 646. Our Supreme Court then stated that the legislative intent underlying the automatic decline is to impose more severe punishment on juveniles that actually committed certain criminal offenses. *Posey*, 161 Wn.2d at 647. This is clear in the language of RCW 13.04.030(1)(e)(v)(E)(II):

> The juvenile court shall have exclusive jurisdiction over the disposition of any remaining charges in any case in which the juvenile is found not guilty in the adult criminal court of the

---

[3] Further, Meridieth contends that the rule of lenity applies here. The rule of lenity requires this court to construe an ambiguous statute strictly and narrowly in favor of the defendant. *State v. Watson*, 160 Wn.2d 1, 14, 154 P.3d 909 (2007). As such, he argues that this court should construe the statute strictly against the State and in his favor. But the State correctly contends that the rule of lenity is inappropriate in this case because Meridieth has not alleged that RCW 13.04.030 is ambiguous.

charge or charges for which he or she was transferred, or is convicted in the adult criminal court of a lesser included offense that is not also an offense listed in (e)(v) of this subsection.

¶19 *Posey*'s analysis—that if the juvenile is acquitted of the enumerated charge, he must be "returned" to juvenile court—is not at odds with the *In re Boot* and *Manro* holdings that the charge determines the proper court jurisdiction. Accordingly, we must determine whether probable cause existed at the time of the automatic mandatory decline hearing to support the allegations that Meridieth committed at least one of the rapes while he was 16 years old. *See Manro*, 125 Wn. App. at 174.

¶20 In the prosecutor's declaration supporting probable cause, the State asserted that A.N.S. and B.A.C. told Bergt that they were 9 and 10 years old and Meridieth was between 15 and 16 years old during the charged incidents. The girls then reported the specific details of the sexual abuse. Both A.N.S. and B.A.C. then told Bergt that "these incidents occurred repeatedly from the time they were nine and ten years of age until the incidents stopped approximately one year ago." CP at 4. One year before the victims' interview would have been August 30, 2004, several months *after* Meridieth turned 16. But from these scant allegations there is no specificity as to either date or type of incident that occurred after Meridieth turned 16. Thus, on the record before us, the automatic declination was faulty.

¶21 Meridieth argued before this court that *Posey* applies in his case, but *Posey* is inapposite. *Posey* did not concern the initial jurisdiction of the adult court, but rather the remedy when the defendant was acquitted of an enumerated offense. *Posey*, 161 Wn.2d at 647. Here, the jury convicted Meridieth of an enumerated offense. While *Posey* dealt with the remainder of the offenses, none enumerated, we are concerned with enumerated offenses for which there were convictions. While the *Posey* court noted that, once acquitted, he "should have been remanded to juvenile court

for a decline hearing or sentencing,"[4] and the State conceded that *Posey* would not have been declined juvenile court jurisdiction, we engage in no such discussion concerning the possible outcome of a declination hearing. *Posey*, 161 Wn.2d at 647, 649 n.6.

¶22 *Dalluge*, 152 Wn.2d at 785-86, clarifies the proper remedy in this case. While the *Posey* court dealt with the loss of valid adult court jurisdiction, *Dalluge* dealt with whether a defendant ever acquired proper adult jurisdiction and what remedy would be available to that defendant, which is the same issue before us now. *Dalluge*, 152 Wn.2d at 785. In *Dalluge*, a 17 year old defendant was originally charged with first degree rape, but his attorney did not object to adult superior court jurisdiction when the State reduced the charge to a nonenumerated offense. *Dalluge*, 152 Wn.2d at 776. Dalluge was convicted of two counts of third degree rape but asserted that he was not afforded a right to a declination hearing. *Dalluge*, 152 Wn.2d at 776-77. The *Dalluge* court held,

> In *Dillenburg*, the petitioner filed for a writ of habeas corpus in superior court, arguing he was improperly tried in adult court. [The *Dillenburg*] court initially concluded that the petitioner had been improperly transferred to adult court and reversed for a new trial. However, upon reconsideration, the court concluded that where the petitioner has demonstrated that a transfer from juvenile court was faulty, the proper remedy is a de novo hearing in superior court on whether declination of juvenile jurisdiction would have been appropriate. If declination would have been appropriate, then the conviction stands.

---

[4] RCW 13.40.110(1) provides in relevant part:

[T]he court on its own motion may . . . file a motion requesting the court to transfer the respondent for adult criminal prosecution and the matter shall be set for a hearing on the question of declining jurisdiction. Unless waived . . . , a decline hearing shall be held when:

(a) The respondent is . . . seventeen . . . and the information alleges a class A felony.

When we remand this case for a decline hearing, the trial court should consider the *Kent* criteria before declining jurisdiction. *See Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966); *State v. Holland*, 98 Wn.2d 507, 515, 656 P.2d 1056 (1983).

Otherwise, the conviction is set aside and a new trial must occur in adult criminal court if the defendant has since turned 18. Subsequently, Washington courts have consistently applied this remedy when lack of adult criminal jurisdiction is successfully argued on appeal.

*Dalluge*, 152 Wn.2d at 785-86 (footnote and citations omitted).

¶23 We hold that the automatic declination was faulty. As such the remedy in *Dalluge* is appropriate. We remand for a de novo *Dillenburg* hearing under RCW 13.40.110 on whether declination of juvenile jurisdiction would have been appropriate. If the superior court finds that declination would have been appropriate, then the conviction stands. If the conviction is set aside, then Meridieth is entitled to a new trial in adult court because he is over 18 years of age. There is no issue of double jeopardy if a new trial ensues. *See State v. Anderson*, 96 Wn.2d 739, 742, 638 P.2d 1205, *cert. denied*, 459 U.S. 842 (1982).[5]

¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PENOYAR, J., concurs.

¶25 HUNT, J. (concurring in part, dissenting in part) — I concur in the majority's holding and remand. But I dissent from their ordering a new trial in adult court if, on remand, the superior court finds that the original automatic decline of juvenile jurisdiction was improper. In dissenting, I intend no criticism of the majority for following the letter of the

---

[5] We do not address the argument of ineffective assistance of counsel because we have determined that the decline of juvenile jurisdiction was faulty and the remedy is plain. This is consistent with the remedy in *Dalluge*, where our Supreme Court did not address defendant's ineffective assistance claim because any possible error would be remedied by the remand to superior court. *Dalluge*, 152 Wn.2d at 789 n.10.

Washington Supreme Court's holding in *Dalluge*, in which the court ordered a new trial in adult court under somewhat similar, but not the same, circumstances. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 100 P.3d 279 (2004).

¶26 I am not persuaded that our Supreme Court would order a new trial under the circumstances here, where Zachary Meridieth has, in essence, already received his *Dalluge* remedy, albeit prematurely: The State has already tried and convicted Meridieth in adult court, where the only identified error was the original, improvident, automatic decline of juvenile court jurisdiction. But because he is now over the age of 21 and too old for remand to the juvenile court,[6] there is simply no way to remedy this previous improper decline. Therefore, I propose that we allow his adult jury conviction to stand.

¶27 In support of this commonsense approach, I cite a recent opinion filed by Division Three of our court in *State v. Doney*, 142 Wn. App. 450, 174 P.3d 1261 (2008). The *Doney* court confronted, and rejected, the prospect of remanding for the trial court to empanel a new jury to consider exceptional-sentence aggravating factors under the "*Pillatos*-fix"[7] statutory amendments in RCW 9.94A-.537(2) (LAWS OF 2007, ch. 205, § 2). Division Three reasoned,

> Part of the [RCW 9.94A.537(2)] amendment stated that if a new sentencing hearing is required, the superior court can impanel a jury to consider aggravating factors that supported the previous exceptional sentence. RCW 9.94A.537(2); *see* LAWS OF 2007, ch. 205, § 2.
>
> Mr. Doney entered his guilty plea before April 15, 2005, which means that the *Blakely*-fix statute would not apply to

[6] RCW 13.40.020(14) (a "juvenile" is a person under 18 years of age); RCW 13.04.030(1)(e) (juvenile courts have exclusive original jurisdiction over juveniles alleged to have committed offenses); *Monroe v. Soliz*, 132 Wn.2d 414, 419, 939 P.2d 205 (1997) (same).

[7] *State v. Pillatos*, 159 Wn.2d 459, 150 P.3d 1130 (2007) (holding that sentencing law changes—authorizing the empanelling of a special jury to determine aggravating circumstances for exceptional sentence purposes—do not apply to cases in which trials have already begun or pleas have already been accepted before the April 15, 2005 effective date of the legislation).

him for sentencing. [*Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).] Therefore, the trial court should not have impaneled a jury to decide the aggravating factors in this case. *However, if Mr. Doney's case is remanded, the* Blakely-*fix statute would apply and Mr. Doney would be entitled to a jury determination of aggravating factors. Mr. Doney has already received two jury determinations of aggravating factors.*[8]

*Doney*, 142 Wn. App. at 454 (emphasis added).

¶28 As in *Doney*, "No decisions address the specific issue here . . . ," *Doney*, 142 Wn. App. at 455, namely whether it was harmless error[9] for the juvenile court to have declined jurisdiction and sent Meridieth to adult court for a jury trial. Also as in *Doney*, the error here was whether the trial court had jurisdiction or authority to employ the procedure it followed; aside from the procedural irregularity, in neither case was there any allegation of substantive error related to the fairness of the procedure.

¶29 Instructive here is Division Three's commonsense resolution of the issue before it:

> *If this case were remanded, Mr. Doney would again have a jury determine these factors* because the new statute—Laws of 2007, ch. 205, § 2—would apply to him. The evidence supporting these factors is overwhelming; however, *Mr. Doney has already, arguably twice, received the benefit of the statute*. Thus, any error at trial was harmless and we affirm Mr. Doney's sentence.

---

[8] The court further noted, "Mr. Doney was given notice that the State intended to seek an exceptional sentence. And the facts supporting an aggravating circumstance were proved to a jury beyond a reasonable doubt." *Doney*, 142 Wn. App. at 454.

[9] Holding the premature jury finding of aggravating factors harmless, the court reasoned,

> In [*State v.*] *Hughes*, 154 Wn.2d 118[, 110 P.3d 192 (2005)], the Supreme Court of Washington held that *Blakely* error is structural and, therefore, can never be harmless. However, *Hughes* was overturned by *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), which held that *Blakely* error could be subject to a harmless error analysis. Constitutional error is harmless if the court is convinced beyond a reasonable doubt that, absent the error, the same result would have occurred at sentencing.

*Doney*, 142 Wn. App. at 454-55.

*Doney*, 142 Wn. App. at 455-56 (emphasis added). I propose that we resolve the issue before us in a similar manner.

¶30 Just as Doney had already received his remedy—a jury determination of aggravating factors—so has Meridieth already received the remedy for which the majority would remand—a jury trial in adult court. Thus, as in *Doney,* if we remand this case and the trial court determines that the juvenile court improperly declined jurisdiction, Meridieth would have a second jury trial in adult court.[10] There having been no allegation of substantive error in his original adult court trial, conducting a second trial in adult court on remand would not accord Meridieth any additional right that he did not have in his earlier trial. Nor would it mitigate any past harm.

¶31 As I noted at the outset, because Meridieth has already received an adult trial, there is no further meaningful remedy available to him. Accordingly, I respectfully dissent from that part of the order of remand that would potentially require a retrial in adult court.

Review denied at 165 Wn.2d 1003 (2008).

---

[10] And if the trial court determines that juvenile court properly declined jurisdiction, Meridieth's previous adult jury trial conviction would remain intact. Either way, however, he ends up with an adult jury trial, not a juvenile court trial, even if a juvenile court trial is what he should have received in the first place.